IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 04-cv-01419-LTB-BNB

YVONNE EPPERSON,
TRACEY GIBSON, and
JUAN-EL FLETCHER,

Plaintiffs,

v.

HOSPITAL SHARED SERVICES, INC. d/b/a FIRSTWATCH SECURITY SERVICES,

Defendant.

---

ORDER

---

This matter is before me on: 1) Defendant's Motion for Summary Judgment As To Plaintiff Juan-El Fletcher; and 2) Defendant's Motion for Summary Judgment As To Plaintiffs Yvonne Epperson and Tracey Gibson, both filed on September 8, 2005, by Defendant Hospital Shared Services, Inc., d/b/a FirstWatch Security Services' ("FirstWatch"). After consideration of the motions and the responsive pleadings, as well as the all related attachments, I GRANT the motions and DISMISS Plaintiffs' case.

## I. BACKGROUND

FirstWatch provides security services to the City and County of Denver at Denver International Airport ("DIA"). Plaintiffs, who are all African-American, worked for FirstWatch as security officers and were subject to adverse employment actions including demotion and termination. They have filed this suit alleging race discrimination pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Plaintiff Fletcher also asserts a claim for discrimination based on her age pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. In addition, Plaintiffs allege state law claims for breach of employment contract and promissory estoppel.

**II. STANDARD OF REVIEW**

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment should be entered if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether,

based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 250. However, I should not enter summary judgment if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992).

**III. RACIAL DISCRIMINATION CLAIMS**

A claim for race discrimination pursuant to Title VII based on circumstantial evidence, as is applicable here, follows the burden shifting framework established in *McDonnell-Douglass Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Id.; EEOC v. Horizon/EMS,* 220 F.3d 1184, 1191 (10th Cir. 2000). The burden the *prima facie* stage is "not onerous" and requires only "a small amount of proof." *Id.* at 1197.

The defendant then bears the burden, at the second stage of the *McDonnell-Douglass* framework, of producing a "legitimate, non discriminatory reason" for this employment decision. *Butler v. City of Prairie Village, Kansas,* 172 F.3d 736, 747 (10th Cir. 1999). If the defendant is able to articulate a valid reason, the plaintiff has the opportunity to prove that the defendant's stated reason "was in fact pretext" for unlawful discrimination at the third stage. *Id.* at 748. Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not

act for the asserted nondiscriminatory reasons." *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997). The plaintiff must present evidence "such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief." *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 -1080 (10th Cir. 1999). "At all times, the plaintiff bears the ultimate burden of proving discrimination." *Butler v. City of Prairie Village, Kansas, supra,* 172 F.3d at 748.

**A. Plaintiff Juan-El Fletcher**

Plaintiff Fletcher was hired by FirstWatch and assigned to work at DIA in 1994. She was promoted to security supervisor in June of 1994. Fletcher claims that FirstWatch began its discriminatory actions towards her in April of 2002, when she was counseled and suspended for two days by the site manager for FirstWatch at DIA, Crystal Taylor, for failure to respond to the scene of a accident when a security officer was run over by a vehicle. In June 2002, she received a written warning from Ms. Taylor for failure to carry a pager and cell phone while on the job after she had been previously warned that it was important for her to do so. Subsequently, Fletcher was given a final written warning, and was again suspended for two days, for failure to report a security officer's illness in September of 2002. Finally, in January 2003, Fletcher was written up by Ms. Taylor for failing to complete documentation of a security officer's work injury. On February 4, 2003, Fletcher was demoted from her supervisory position, on Ms. Taylor's recommendation. Plaintiff Fletcher accepted FirstWatch's offer of continued employment as a security officer. Fletcher asserts that the disciplinary actions against her, including her eventual demotion, by FirstWatch and Ms. Taylor were racially motivated in violation of Title VII.

Plaintiffs generally allege that Crystal Taylor made comments which expressed a racial animus. Plaintiffs refer me to the deposition testimony of Plaintiff Gibson, who recalled Ms. Taylor calling her one of the "black girls;" calling her family the "Jamaican family;" and calling another group of officers "the Ghanaians." Plaintiff Epperson testified in her deposition that Ms. Taylor told her that she was "tired of you black people" and, when Epperson complained, she testified that Ms. Taylor responded "What's the big deal about these people? They are blacks. What's the big deal."

Plaintiffs also assert that Ms. Taylor engaged in disparate treatment based on race. Epperson testified in her deposition that Ms. Taylor would move African-American employees from their posts in order to accommodate a white employee's request for the post. In her deposition, Plaintiff Fletcher alleged that when Ms. Taylor disciplined her for failing to do an injury report, her supervisor-in-tandem, who was African-American as well, was also written up. When she later written up for the same thing, her white supervisor-in-tandem at that time, Dorothy Paplow, was not written up. Fletcher further testified that after Ms. Taylor disciplined her up for forgetting her cell phone and pager, she witnessed a subsequent occasion when Ms. Paplow was not disciplined for the same behavior.

In its motion for summary judgment, FirstWatch first asserts that Plaintiff Fletcher cannot make a *prima facie* case of racial discrimination. A *prima facie* case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that: (1) the plaintiff is a racial minority; (2) the plaintiff was disciplined by the employer; and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination. *Jones v.*

*Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)(also articulating the standard for a *prima facie* discriminatory demotion case).

It is undisputed that Ms. Fletcher is a racial minority who was adversely disciplined by her employer, FirstWatch. The issue is whether she can prove that the discipline and her ultimate demotion was imposed under circumstances that give rise to an inference of racial discrimination. One of the ways this third prong of the *prima facie* case may be met, "is by attempting to show that the employer treated similarly situated employees differently." *Id.* As discussed above, Fletcher testified that she was disciplined and demoted for various infractions for which white employees were not similarly disciplined. Although my review of Plaintiff Fletcher's deposition does not reveal clear and unequivocal testimony of disparate treatment, as related to other similarly situated white employees and under the same circumstances, I conclude the evidence is sufficient to withstand Fletcher's modest *prima facie* burden. *See EEOC v. Horizon/EMS, supra*, 220 F.3d at 1197 (a plaintiff's *prima facie* burden requires only "a small amount of proof").

At the second stage of the *McDonnell-Douglass* framework, FirstWatch contends that Plaintiff Fletcher was not satisfactorily performing her job, as evidenced by her numerous employment infractions, and thus its disciplinary actions, most specifically her demotion, were done for a legitimate, nondiscriminatory reasons. Because FirstWatch is able to articulate a valid reason, the burden shifts to Fletcher to prove that the stated reason for the discipline and demotion was actually pretext at the third stage of the *McDonnell-Douglass* framework. *See Jones v. Denver Post, supra*, 203 F.3d at 753 (defendant need only "explain its actions against

the plaintiff in terms that are not facially prohibited by Title VII")(*quoting EEOC v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir.1992)).

Fletcher's argument here at the third stage is that because the underlying disciplinary actions were motivated by racial animus, as evidenced by Ms. Taylor's specific racial comments in other circumstances and her disparate treatment of African-American employees, then the reason for her discipline and demotion must have been pretextual.

However, "[m]ere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan v. Hilti*, *supra*, 108 F.3d at 1323. Fletcher does not contest that her actions resulting in the discipline by FirstWatch did not occur or were misrepresented; rather she alleges that she was disciplined when, under similar circumstances, white employees were not. Fletcher admitted in her deposition that she was unable to specifically identify an incident in which a white supervisor was not written up for the same behavior. And my review of her deposition testimony regarding Ms. Paplow was not specific enough to provide sufficient evidence that she was disciplined differently in a similar situation or comparable circumstances. While all doubts concerning pretext must be resolved in the plaintiff's favor, "a plaintiff's allegations alone will not defeat summary judgment." *Id.* at 1324.

In addition, although the racial comments alleged made by Ms. Taylor may serve as circumstantial evidence of discrimination in the context of proving pretext, Plaintiffs are required to show "some nexus between the statements and the Defendant's decision to terminated the employee." *Shorter v. ICG Holdings, Inc,* 188 F.3d 1204, 1210 (10th Cir. 1999), *overruled on*

*other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 98-102, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). *See also Gurule v. San Juan County Government,* 376 F.Supp.2d 1195, 1203 (D.N.M. 2005). The alleged isolated comments at issue here, which are unrelated to the challenged action, "are insufficient to show discriminatory animus in termination decisions." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994).

As a result, I conclude that Plaintiff Fletcher's unsubstantiated contention that the disciplinary actions against her were actually motivated by racial animus, as opposed to her actions, is not sufficient to meet her summary judgment burden under the third stage of the analysis. Plaintiff has not carried her ultimate burden of demonstrating genuine issues of material fact concerning pretext. Therefore, because Plaintiff Fletcher has not presented evidence such that a reasonable jury could find that FirstWatch's articulated reason for demoting her was pretextual, she has failed to defeat summary judgment on her claim for racial discrimination under Title VII.

**B. Plaintiff Yvonne Epperson**

Plaintiff Epperson was hired by FirstWatch and assigned to DIA in 2000. The record reveals that prior to her termination on March 21, 2003, Epperson received numerous disciplinary and counseling notices related to her dilatory attendance and her incompatible interaction with co-workers. After she became ill when working at an outside security post at DIA, Epperson asked to be transferred to a post without fume exposure. Epperson contends that Ms. Taylor refused to give her a permanent post inside, although she did give such positions to white employees. During a heated conversation about the availability of posts for Epperson, Ms. Taylor and another personnel officer asked Epperson to surrender her security badge. When

Epperson refused to do so, she was immediately escorted from DIA and subsequently terminated. Epperson contends that she was terminated because a medical condition required that she be moved from her post, and Ms. Taylor refused to reassign her to a new post when similarly situated white employees with physical concerns were allowed to move.

FirstWatch argues that Plaintiff Epperson cannot make a *prima facie* case for racial discrimination. FirstWatch does not dispute that Epperson is a racial minority and that she was disciplined resulting in an adverse employment action in the form of termination from her employment. It contends that she cannot met the third prong of the *prima facie* case – that the discipline imposed, under the circumstances, gives rise to an inference of racial discrimination. I agree.

Plaintiff Epperson does not dispute that her failure to surrender her security badge is grounds for immediate termination. Instead, she argues that she was actually terminated because she needed to be moved to a different post. She testified that other white employees were allowed to change posts to accommodate health issues, and concludes from this that her termination gives rise to an inference of racial discrimination. Epperson's unsupported claim regarding the reason for her termination is contradicted by the record. Even if her request to change her post was denied, it is clear that she was terminated for her failure to surrender her security badge when requested to do so by Ms. Taylor. To the extent Epperson generally asserts that a white employee under similar circumstances would not have been asked to surrender his or her badge and, when they refused, would not have been terminated, she points to no specific evidence to support such a claim. *See Jones v. Denver Post, supra,* 203 F.3d at 756 (without specific examples of unlawful discrimination, a plaintiff cannot show that he or she was treated

differently than other similarly situated employees to give rise to an inference of racial discrimination under the third prong of a *prima facie* case).

Therefore, despite the very low threshold, I conclude that Epperson has failed to establish the third prong of her *prima facie* case in that she has no cognizable evidence to support an inference of racial discrimination under the circumstances related to her termination. Because Epperson has presented no evidence such that a reasonable jury could a *prima facie* case of racial discrimination, she has failed to defeat summary judgment on her Title VII claim.

**C. Plaintiff Tracey Gibson**

Plaintiff Gibson was hired by FirstWatch and assigned to DIA in 2002. The record reveals a history of severe attendance violations during Gibson's first five months of employment. On October 1, 2002, Gibson and a United Airlines employee engaged in an altercation in the employee parking lot. Based on Plaintiff Gibson's admitted conduct during the incident and her demeanor at the meeting regarding the incident, Ms. Taylor recommended Gibson's termination. Gibson contends that her actions during the incident were not inappropriate and, furthermore, that she was not representing her employer, FirstWatch, at the time of the incident. As a result, she contends that her termination was in violation of Title VII because it was racially motivated.

FirstWatch again asserts that Plaintiff Gibson cannot make a *prima facie* case for racial discrimination. FirstWatch does not dispute that Gibson is a racial minority and that she was subject to discipline resulting in an adverse employment action. Instead, FirstWatch argues that Gibson cannot prove that the discipline imposed, under the circumstances, gives rise to an inference of racial discrimination – the last requirement of her *prima facie* case. I agree.

Gibson points to no specific or cognizable evidence that a similarly situated white employee would not have been subject to the same discipline under the same circumstances. Her argument consists only of a vague allegation that her termination must have been motivated by Ms. Taylor's racial animus because another unnamed white employee who engaged in a fight was not terminated. This allegation is not sufficient to met the burden of the third prong of a *prima facie* case. *See Jones v. Denver Post, supra,* 203 F.3d at 756. Likewise, Gibson's unsupported contention that there was no investigation into the incident by FirstWatch – instead they assumed that she acted inappropriately – is not supported by the record. Ms. Taylor testified that it was Gibson's admitted conduct during the incident and, more importantly, her conduct during their discussion afterwards that were the grounds for her termination. Gibson refers me to no objective evidence to the contrary.

Therefore, I conclude that Gibson has failed to establish the third prong of her *prima facie* case in that she has no cognizable evidence to support an inference of racial discrimination and, as a result, she has failed to defeat summary judgment on her Title VII claim.

## IV. AGE DISCRIMINATION CLAIM

Plaintiff Juan-El Fletcher also brings a claim for age discrimination against FirstWatch. Disparate treatment claims brought pursuant to the Age Discrimination in Employment Act, (the "ADEA"), like cases brought pursuant to Title VII, follow the shifting-burden framework set forth in *McDonnell-Douglass Corp. v. Green, supra,* absent direct proof of discriminatory intent. *See Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir. 1995); *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998)("[i]n evaluating ADEA claims,

the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas*"). As such, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence; the burden then shifts to the defendant to produce a valid reason for the adverse employment decision; and then the plaintiff has the opportunity to prove that the defendant's stated reason was pretext. *Id.* To make out her *prima facie* case in the initial stage of an ADEA claim, a plaintiff must show that: 1) she belongs to the protected age group; 2) her job performance was satisfactory; 3) she was discharged from her position; and 4) she was replaced by a younger person. *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1441 (10th Cir. 1996) *(quoting Thomas v. IBM, supra,* 48 F.3d at 486); *see also Rivera v. City and County of Denver,* 365 F.3d 912, 920 (10th Cir. 2004).

It is undisputed that Plaintiff Fletcher was 51 years old at the time of her demotion, which is within the protected age group (the first prong); she was subject to an adverse employment decision (the third prong); and her position was filled by a younger person (the fourth prong). The issue here, then, is whether Fletcher has met the burden of her *prima facie* case by establishing the second prong – that she was satisfactorily performing her job.

As previously discussed, Plaintiff Fletcher admitted to the conduct underlying the discipline that, in turn, lead to her demotion. She has simply failed to present any evidence that supports a finding that she was performing her supervisory duties in a satisfactory manner and, as such, has failed to met her burden of establishing a *prima facie* case of discrimination based on her age. *See Hill v. Steven Motors, Inc.*, 97 Fed. Appx. 267, 274 (10th Cir. 2004)(it is the manager's perception of the employee's performance that is relevant, not the employee's

subjective evaluation of her own relative performance)(*quoting Jones v. Denver Post, supra,* 203 F.3d at 754).

## V. STATE LAW EMPLOYMENT CONTRACT CLAIMS

### A. Breach of Employment Contract Claims

Plaintiffs also assert state law claims for breached an implied employment contract. They assert that despite the fact that the applicable employment guideline clearly and conspicuously specified the at-will nature of their employment, FirstWatch's disciplinary procedures create an implied employment contract which FirstWatch breached when it terminated or demoted them in violation of its own mandatory disciplinary scheme.

Under certain circumstances, an employee handbook that describes procedures for discipline and termination can create an implied contract overcoming an employment arrangement that would otherwise be at-will. *Continental Airlines, Inc., v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). To show such an implied employment contract, the plaintiff must first demonstrate that the procedures in the manual were part of the employment offer and that the plaintiff accepted employment or continued employment in reliance on these provisions. Second, a plaintiff can show an employment relationship if the manual contains no disclaimer or only an inconspicuous disclaimer. Third, even in the presence of such a disclaimer, an employment agreement may be created if the manual's procedures for termination are mandatory. Finally, even if there is a disclaimer and the termination procedures are discretionary, the issue of the existence of an employment relationship is a jury question if the plaintiff provides evidence that the employer treated the disciplinary provisions of the employment handbook as mandatory. *See Mariani v.*

*Rocky Mountain Hospital & Medical Service*, 902 P.2d 429, 434-435 (Colo. App. 1994); *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408 (Colo. App. 1993)(ruling that when managers treat compliance with disciplinary procedures as mandatory and binding, and the disclaimer provisions were not conspicuous, the implied contract question was for the jury).

FirstWatch gave each Plaintiff a copy of its January 1999 Employment Guidelines for Employees Providing Security Services to the City and County of Denver. These guidelines provided, on page one and in bold, capitalized type, as follows:

> **THESE GUIDELINES DO NOT CONSTITUTE A CONTRACT OF EMPLOYMENT, EITHER EXPRESS OR IMPLIED.**
>
> **EMPLOYMENT WITH [FIRSTWATCH] IS AT-WILL EMPLOYMENT. EMPLOYEES HAVE THE RIGHT TO END THEIR EMPLOYMENT WITH [FIRSTWATCH] AT ANY TIME, WITH OR WITHOUT NOTICE, AND [FIRSTWATCH] HAS THE SAME RIGHT.**

In addition, Plaintiffs Fletcher and Epperson signed an Acknowledgment of Receipt when she received the FirstWatch guidelines, which contained the following statement:

> I understand that nothing in these Employment Guidelines creates an express or implied contract of employment or employment conditions between [FirstWatch] and me, and [FirstWatch] retains the sole right to modify, suspend, interpret, or cancel in whole or in part at any time and with or without notice of any of the published or unpublished Employment Guidelines and benefits.

Fletcher acknowledged in her deposition testimony that her relationship with FirstWatch was at-will.

The guidelines included a policy that referenced a wide range of available disciplinary responses depending on the circumstances. It stated that FirstWatch "reserves the right to

impose disciplinary action that, in its opinion, deems appropriate depending on the circumstances involved. Disciplinary actions range from a verbal reprimand to discharge." The guidelines further stated that "action taken by [FirstWatch] in an individual case does not establish any precedent in other circumstances. Employees should not assume [FirstWatch's] action in an individual case establishes a precedent for further disciplinary situations."

This language cannot, as a matter of law, be construed to contain mandatory termination procedures or require "just cause" for termination that would create an implied contract despite the conspicuous disclaimer. *See also Mariani v. Rocky Mountain Hosp., supra*, 902 P.2d at 435; *Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1 (Colo. App. 1991).

Furthermore, I am unpersuaded by Plaintiffs' argument that despite the lack of disciplinary process in the guidelines, FirstWatch's policies and procedures and its disciplinary scheme in application was a mandatory progressive three-step process before ultimately resulting in termination. My review of the deposition testimony relied upon by Plaintiffs does not provide sufficient evidence to raise a genuine issue of material fact related to this claim.

First, despite Plaintiffs' argument to the contrary, the deposition testimony of Ms. Taylor does not support their claim of a mandatory progressive disciplinary system. Although she testified as to numerous offenses that were, in her opinion, requisite cause for immediate termination, Ms. Taylor did not testify that all other offense were subject to some standard disciplinary scheme. Plaintiffs mischaracterize Ms. Taylor's testimony regarding the general course of a termination decision, and the goal to be objective in those decisions, as an established or mandatory disciplinary structure. As to Plaintiff Gibson's testimony, although she testified

that it was her understanding, apparently from an orientation session, that FirstWatch employed a "three-strikes and you are out" structure for non-serious offenses, it is clear from her testimony that this understanding was a general impression that she could not substantiate with specifics or with language from the guidelines. I cannot find that this unsupported and ambiguous testimony is sufficient to support an inference of such a disciplinary scheme, especially in light of the clear contrary evidence.

In conclusion, because there is insufficient evidence that FirstWatch's supervisors treated any disciplinary procedure as mandatory and binding, particularly in light of the clear and conspicuous at-will provisions in the guidelines, *see Mariani v. Rocky Mountain Hosp., supra,* 902 P.2d at 435, Plaintiffs have failed to raise an issue of fact on the issue of creation of an employment agreement. Therefore, their breach of employment contract claim fails and renders summary judgment in favor of FirstWatch appropriate.

**B. Promissory Estoppel Claims**

For similar reasons, Plaintiffs have failed to defeat summary judgment on their related claims for promissory estoppel. An employee can enforce an employer's personnel policies even if the employee cannot make out a breach of contract claim if the employee can show that the "employer should have reasonably expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." *Continental Airlines, supra,* 731 P.2d at 712.

However, in support of their promissory estoppel claims, as with their breach of contract claims as discussed above, Plaintiffs have offered no evidence that any written procedures exist, and insufficient evidence that any unwritten policies exist, that were binding on the management of FirstWatch. As a result, they cannot establish that they could reasonably have relied on such written or unwritten policies as a commitment from FirstWatch. Furthermore, summary judgment denying promissory estoppel claims is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees. *See Silchia v. MCI Telecommunications Corp.*, 942 F.Supp. 1369, 1374 (D.Colo. 1996).

ACCORDINGLY, for the reasons stated above, it is therefore ORDERED that:

1) Defendant's Motion for Summary Judgment As To Plaintiff Juan-El Fletcher [# 28] is GRANTED;

2) Defendant's Motion for Summary Judgment As To Plaintiffs Yvonne Epperson and Tracey Gibson [#29] is GRANTED;

3) Plaintiff's case is DISMISSED WITH PREJUDICE; and

4) Defendant is AWARDED its costs.

Dated: November 15, 2005, in Denver, Colorado.

BY THE COURT

s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE